UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL BARGE LINE LLC AND ACBL TRANSPORTATION SERVICES LLC, AS OWNERS PRO HAC VICE OF THE M/V SAFETY GOAL, ITS ENGINES, TACKLE, GEAR, APPURTENANCES, ETC. IN REM | CIVIL ACTION<br><br>23-364-SDD-EWD<br>c/w 23-407-SDD-EWD |

RULING

Before the Court is a Motion for Summary Judgment filed by Marquette Transportation Company, LLC ("Marquette")[1] seeking dismissal of all claims brought against it by American Commercial Barge Line, LLC ("ACBL"). ACBL opposes the Motion.[2] Marquette filed a Reply.[3] For the reasons that follow, the Motion will be granted in part and denied in part.

I.  BACKGROUND

George Bates ("Bates") filed suit in state court against ACBL and Marquette alleging that on or about October 28, 2022, he was injured while employed by ACBL and working as a member of the M/V SAFETY GOAL (the "SAFETY GOAL") on the Mississippi River.[4] ACBL is the owner *pro hac vice* of the SAFETY GOAL, and Bates alleged that Marquette "contributed to the supervision, planning, and execution of the job which was being performed on the day of the incident and failures [that] contributed to [Bates'] life

---

[1] Rec. Doc. 69.
[2] Rec. Doc. 72.
[3] Rec. Doc. 73.
[4] *See* Rec. Doc. 37-2.

altering injuries."[5] Bates alleged that ACBL and Marquette were negligent and that the SAFETY GOAL was unseaworthy.[6]

ACBL and Marquette subsequently filed separate actions for limitation of liability in this Court, which were consolidated.[7] Bates filed a claim in ACBL's limitation action.[8] He alleges that ACBL was negligent in causing the accident, that the SAFETY GOAL was unseaworthy, and that he is entitled to maintenance and cure.[9] Marquette also filed a claim, seeking from ACBL "full contractual indemnity and/or contribution for all damages, if any, arising out of the Incident underlying the present litigation, that Marquette may be required to pay to claimant Bates and/or any other party."[10]

ACBL filed a claim in Marquette's limitation action demanding contribution and/or indemnity "should there be judgment against ACBL in this or any action, lawsuit, or claim arising out of the Incident[.]"[11] ACBL alleges that Bates was injured while aboard the MTC 640, a barge owned by Marquette.[12] ACBL also alleges the involvement of another Marquette-owned vessel, the M/V CRISTO SANTO (the "CRISTO SANTO"), in the work being done at the time of Bates' alleged injuries.[13] ACBL denies any fault with respect to Bates' claims.

Marquette now seeks summary dismissal of ACBL's claim on the following grounds: "(1) Marquette did not breach its duty of reasonable care it owed to [Bates], (2) Marquette's tug boat, the M/V CRISTO SANTO, was an assist tug working as ACBL

---

[5] *Id.* at ¶¶ 10, 11.
[6] *Id.* at ¶¶ 12, 13
[7] See Case No. 23-cv- 364, Rec. Doc. 1; Case No. 23-CV-407, Rec. Doc. 1. *See also* Rec. Doc. 24.
[8] Rec. Doc. 11, pp. 9–15.
[9] *Id.*
[10] Rec. Doc. 14, p. 6.
[11] 23-cv-407-SDD-EWD, Rec. Doc. 10, pp. 6–7, ¶ 6.
[12] *Id.* at p. 6, ¶ 4.
[13] *Id.* at pp. 2–3.

directed and therefore is exonerated from liability, and (3) Marquette did not owe Bates a duty of unseaworthiness as a matter of law."[14]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[15] This determination is made "in the light most favorable to the opposing party."[16] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[17] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[18] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[19]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[20] All reasonable factual

---

[14] Rec. Doc. 69-3, p. 1.
[15] FED. R. CIV. P. 56(a).
[16] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[17] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 333–34 (1986)).
[18] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).
[19] *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[20] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).

inferences are drawn in favor of the nonmoving party.[21] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[22] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment."[23]

## B. Discussion

Marquette's version of the relevant facts is as follows. On the date in question, the SAFETY GOAL was in the process of securing a pack of three barges to other barges which were already attached to an anchor buoy.[24] The CRISTO SANTO was serving as an assist tug on this task, following the orders of ACBL's Mike Meche, captain of the SAFETY GOAL ("Captain Meche").[25] Pursuant to Captain Meche's orders, in the process of securing the barges, the CRISTO SANTO "was pushing on the tow's side to pin it to the anchor block."[26] At some point, Captain Meche ordered the CRISTO SANTO to stop pushing on the tow, so the CRISTO SANTO "backed off of the tow but remained nearby."[27] After the CRISTO SANTO had backed away, Captain Meche instructed Bates and another ACBL employee, Rodney Conner, to manually "break loose" one of the barges from the pack.[28] Bates was aboard the MTC 640 at this time, which was owned by Marquette. Marquette avers that "once the cable was untied the barge started going

---

[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[22] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[23] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).
[24] Rec. Doc. 69-3, pp. 5–6.
[25] *Id.* at p. 6.
[26] *Id.*
[27] *Id.*
[28] *Id.*

around so fast and Conner instructed Bates to 'grab the cable.'"[29] Bates was pulling back on the cable when he allegedly sustained his injuries.[30] Marquette argues that the CRISTO SANTO was following Captain Meche's orders at all times and that it bears no fault for Bates' alleged injuries.

ACBL's version of the facts differs slightly. According to ACBL, after the SAFETY GOAL had secured the three barges, it received instructions from a receiving vessel to "transport the outside barge, the PML 969, from the anchor block to the receiving vessel."[31] Captain Meche instructed the CRISTO SANTO to "hold the PML 969 'in place'" while SAFETY GOAL crewmembers Bates and Conner disconnected the wires between the PML 969 and the other barges.[32] According to ACBL, Captain Meche realized that the CRISTO SANTO "was pushing with such force as to cause the [SAFETY GOAL] to collide with the anchor chain of the anchor block."[33] ACBL avers that Captain Meche did not instruct the CRISTO SANTO to entirely release its hold on the PML 969; rather, he only instructed the CRISTO SANTO to "let off" and "stop shoving so hard."[34] After giving this direction to the CRISTO SANTO, Captain Meche instructed Bates and Conner to disconnect the downriver wire holding the PML 969 to the pack of barges.[35] When they did so, the PML 969 "allegedly gaped out approximately four to five feet" because the CRISTO SANTO was no longer holding it in place.[36] At this point, Bates was standing on the MTC 640, which was still connected to the pack of barges.[37] Bates began walking

---

[29] *Id.*
[30] *Id.*
[31] Rec. Doc. 72, p. 4.
[32] *Id.*
[33] *Id.*
[34] *Id.* at p. 8.
[35] *Id.* at p. 4.
[36] *Id.* at pp. 4–5.
[37] *Id.*

backward while pulling the wire he had just disconnected in an effort to keep the wire from falling into the river.[38] While walking backward, Bates allegedly tripped and fell over a stationary ratchet.[39] ACBL asserts that the PML 969 would not have "gaped out" and the accident thus would not have occurred if the CRISTO SANTO had followed Captain Meche's instructions.

### 1. Negligence

"Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact."[40] To state a negligence claim under maritime law, a claimant "must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'"[41] The Eastern District of Louisiana has summarized the duties owed by assist tugs such as the CRISTO SANTO as follows:

> "Assist tugs have a duty to follow the orders of others rather than taking action on their own." *In re Can Do, Inc. I*, No. CIV.A. 02-067, 2004 WL 2216529, at *9 (E.D. La. Sept. 30, 2004). An assist tug that acts under and in compliance with the orders of a third-party pilot, who it is bound to obey, cannot be liable for damage caused by the vessel "being assisted unless it is shown that [the assist tug] is guilty of some independent negligence." *Baker, Carver & Morrell Ship Supplies v. Mathiasen Shipping Co.*, 140 F.2d 522, 525 (2d Cir. 1944); *accord Penn Mar., Inc. v. Chevron U.S.A. Inc.*, No. CV 13-5441, 2014 WL 12539343, at *1 (E.D. La. July 28, 2014) (observing that "assist tugs are only exonerated from liability if they are not negligent in carrying out their orders"). A tug "owes a duty to exercise reasonable care and maritime

---

[38] *Id.*
[39] *Id.*
[40] *Archer Daniels Midland, Co. v. M/T AMERICAN LIBERTY*, 538 F. Supp. 3d 641, 648 (E.D. La. 2021) (quoting *Luwisch v. Am. Marine Corp.*, No. CV 17-3241, 2018 WL 3031887, at *4 (E.D. La. June 18, 2018)).
[41] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting, in turn, *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).

skill, as prudent navigators employ in the performance of similar services." *Aiple Towing Co. v. M/V Lynne E. Quinn*, 534 F. Supp. 409, 411 (E.D. La. 1982).[42]

It is undisputed that Bates was not employed by Marquette and was not a crewmember of Marquette's MTC 640 barge.[43] Bates testified at his deposition that Marquette did not direct his work on the day of the incident.[44] He also testified that CRISTO SANTO "was out there but […] it wasn't working with us."[45] Marquette argues this testimony is sufficient to warrant summary judgment because it shows that the CRISTO SANTO "was not involved in the incident."[46] However, Marquette's own recitation of the underlying facts acknowledges the involvement of the CRISTO SANTO in assisting the SAFETY GOAL in maneuvering the barges on the day in question.[47] Further, Captain Meche and Rodney Conner testified that the CRISTO SANTO was supposed to hold the barge in place while Bates and Conner released it from the pack.[48] The details of the involvement of the CRISTO SANTO is a disputed issue of material fact.

Next, Marquette argues that summary judgment is warranted because the CRISTO SANTO "followed all of Captain Meche's instructions and orders timely and accurately."[49] Captain Meche testified in his deposition that the CRISTO SANTO did not give the instruction to Bates to cut the wire loose, and that the CRISTO SANTO was not involved

---

[42] *Cornerstone Chem. Co. v. Nomadic Milde M/V*, 603 F. Supp. 3d 387, 390–91 (E.D. La. 2022).
[43] Rec. Docs. 69-2 & 72-1, ¶ 4.
[44] Rec. Doc. 65-7, p. 17.
[45] *Id.* at p. 5.
[46] Rec. Doc. 69-3, p. 13.
[47] *Id.* at pp. 5–6.
[48] *See* Rec. Doc. 72-2, p. 3; Rec. Doc. 72-4, p. 2.
[49] Rec. Doc. 69-3, p. 14.

in deciding how to place the barges.[50] He testified that as he approached the anchor block, he told the CRISTO SANTO "to pin me in once I got landed."[51]

The main dispute between the parties on the instant Motion is whether Captain Meche instructed the CRISTO SANTO to entirely release its hold on the outside barge, the PML 969, before Bates and Conner were directed to cut it loose. ACBL argues the CRISTO SANTO was to maintain contact with the PML 969 and that Captain Meche only instructed the CRISTO SANTO to apply less throttle while continuing to hold the barge in place. ACBL maintains that the incident would not have occurred if the CRISTO SANTO had properly followed Captain Meche's instructions because the PML 969 would not have "gaped out" when it was disconnected by Bates. Marquette, on the other hand, asserts that Captain Meche directed the CRISTO SANTO to entirely release from contact with the barge.

In support of its position, Marquette relies on the following excerpts of Captain Meche's deposition:

> Q. ... But you told [the CRISTO SANTO] to not hold the barge in at one point in time. Is that fair?
>
> [Objection by counsel]
>
> A. Yes. Because he was pushing me in too hard to where he was putting my boat in jeopardy with the anchor chain of the anchor buoy.
>
> Q. And ... when you told the deckhands to cut the barge loose, [the CRISTO SANTO] was not pushing up against the barge. Is that fair?
>
> A. Yes.[52]

---

[50] Rec. Doc. 65-9, pp. 10–12.
[51] *Id.* at pp. 11–12.
[52] *Id.* at pp. 5–6.

> …
>
> Q. But when you told the deckhands to cut the outside barge loose, you knew [the CRISTO SANTO] was not pushing against the outside barge. Fair?
>
> [Objection by counsel]
>
> A. Yes.[53]

Marquette also points to an "Incident Investigation Report" created by ACBL which reports that Captain Meche "ordered the [CRISTO SANTO] to stop pushing in" before he instructed Bates and Conner to disconnect the PML 969.[54]

In response, ACBL points to the following exchanges in Captain Meche's deposition:

> Q. And although you told them to back off the PML barge to prevent … the anchor buoy from getting caught up in [the SAFETY GOAL'S] … wheel or prop system, you never told the captain of [the CRISTO SANTO] to release the barge entirely; right?
>
> [Objections by counsel]
>
> A. Right.[55]
>
> …
>
> Q. And just to make sure I understand this right, the entire purpose of [the CRISTO SANTO'S] involvement was to keep these barges from gapping out while the deckhands were cutting the wires?
>
> A. Yes.[56]
>
> …

---

[53] *Id.* at p. 6.
[54] Rec. Doc. 69-6, p. 1.
[55] Rec. Doc. 72-2, pp. 7–8.
[56] *Id.* at p. 9.

> Q. ... When you thought [the CRISTO SANTO] was pushing too hard in the process of securing the barges to the anchor block, what exactly did you tell the captain of [the CRISTO SANTO]?
>
> [Objection by counsel]
>
> A. I don't remember exactly what I said, but I would have told him something along the lines about stop shoving so hard.[57]

ACBL also relies on testimony from Captain Meche to suggest that the CRISTO SANTO should have taken action on its own to pin the barge back into place when it started gaping:

> Q. ... Would it be common for, based on, like, marine practices, for [the CRISTO SANTO] to intervene in an active marine operation without your instruction – even though he was there to follow your instructions?
>
> [Objection by counsel]
>
> A. Yes. It – certain situations, like, you would expect somebody to do something even if they weren't instructed, if it was to help.[58]

Viewing the evidence in the light most favorable to ACBL as the nonmovant, the Court finds that genuine issues of material fact preclude summary judgment. Marquette argues the Court should discredit the portions of Captain Meche's testimony upon which ACBL relies as "contradictory and internally inconsistent."[59] However, the Fifth Circuit has instructed that "choosing which testimony to credit and which to discard" is improper at summary judgment stage.[60] The Court finds that a reasonable juror could credit Captain Meche's testimony suggesting that the CRISTO SANTO contributed to Bates' alleged

---

[57] *Id.* at p. 10.
[58] *Id.* at p. 12.
[59] Rec. Doc. 73, p. 5.
[60] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015) (citing *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).

injuries by failing to fulfill its duties. Therefore, Marquette's Motion is denied with respect to negligence.

### 2. Seaworthiness

"A worker must be a member of a vessel's crew to assert an unseaworthiness claim."[61] It is undisputed that Bates was not a member of the MTC 640,[62] and ACBL makes no argument that Marquette would be liable for Bates' unseaworthiness claim. Therefore, Marquette's Motion will be granted with respect to seaworthiness.

### III. CONCLUSION

For the foregoing reasons, Marquette's Motion[63] is GRANTED IN PART and DENIED IN PART.

Marquette's Motion for Summary Judgment on liability for any claim of unseaworthiness is GRANTED. Marquette's Motion is otherwise DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 13 day of November, 2025.

SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[61] *Barlow v. BP Expl. & Prod., Inc.*, 620 F. Supp. 3d 475, 480 (E.D. La. 2022) (citing *Book v. Nordrill, Inc.*, 826 F.2d 1457, 1463 (5th Cir. 1987)).
[62] Rec. Docs. 69-2 & 72-1, ¶ 4.
[63] Rec. Doc. 69.